**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VANESSA NEWPORT,

        *Plaintiff*,

v.                                       Case No.: 6:18-cv-00536-Orl-18GJK

FRONTIER AIRLINES, INC.,                Honorable G. Kendall Sharp
                                             Magistrate Judge Gregory J. Kelly

        *Defendant*.

_____/

## DEFENDANT FRONTIER AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT (DISPOSITIVE MOTION)

        Defendant, FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, pursuant to Fed. R. Civ. P. 56, moves for summary judgment in its favor.

## INTRODUCTION

        Plaintiff Vanessa Newport ("Plaintiff") was a passenger on Frontier Flight 1220 from Las Vegas, Nevada to Orlando, Florida on February 14, 2016. She alleges personal injuries, including burns and deep vein thrombosis ("DVT"), following a hot water spill. Plaintiff alleges Frontier was negligent because when she asked for hot tea, she was served a cup of hot water closed with a lid, and a teabag and sugar packets on the side, and was forced to prepare her own tea, which required her to remove the lid off of the cup. Frontier's Motion for Summary Judgment should be granted because Plaintiff's negligence claim is preempted by the Airline Deregulation Act of 1978 ("ADA"). Alternatively, if this Court finds that Plaintiff's claim is not preempted by the ADA, summary judgment should still be granted because Plaintiff has not presented any evidence that Frontier breached any applicable standard of care or that Frontier was the cause of her alleged injuries. Also in the alternative, to the extent

Plaintiff's liability claim survives summary judgment, Frontier seeks partial summary judgment on Plaintiff's DVT claim, because there is no evidence that such condition was caused by the subject incident.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff was a passenger on Frontier Flight 1220 from Las Vegas, Nevada to Orlando, Florida on February 14, 2016 (the "subject flight"). (Complaint (Doc. #2) attached as Exhibit A, ¶¶ 6, 8.)

2. To enhance the passenger's flying experience, Frontier offers its passengers beverage service, which includes hot tea and coffee. Frontier does not serve custom-made or made-to-order beverages because (a) customers prefer to prepare their own beverages, (b) allowing customers to prepare beverages to their liking is the industry standard, and (c) Frontier would not have the staff, time, or resources to carry out a custom-order beverage service. (Laura T. Rush Declaration attached as Exhibit B ("Rush Decl."), ¶ 5.)

3. During the subject flight, Frontier's flight attendants performed various in-flight services, including beverage service. Beverage service comprised of serving passengers their choice of beverage. (*Id.* at ¶ 6; Plaintiff Deposition attached as Exhibit C ("Plaintiff Dep.") at 23:12-27:9.)

4. Plaintiff ordered hot tea. The flight attendant asked if Plaintiff wanted to be provided cream and sugar to add to her hot tea. Plaintiff responded she only wanted sugar. The flight attendant handed Plaintiff a cup of hot water closed with a lid, and a teabag and a sugar packet on the side. (Plaintiff Dep. at 27:4-29:17.)

5. Plaintiff accepted the cup of hot water from the flight attendant and placed it in the cup holder on her tray table, which she had already placed in the down position. The cup was

insulated and Plaintiff does not remember the cup feeling hot to touch. (Plaintiff Dep. at 26:6-29:17.)

6.      After Plaintiff placed the cup of hot water onto her tray table, she took the lid off the cup, and "then something jerked and then it just - [she] lost control of it and it came, you know, flying and pouring into [her] lap." (*Id.* at 29:18-29:24.)

7.      Before the spill, but after Plaintiff had been served, the flight attendant who had served Plaintiff had already moved on to provide beverage service to other passengers. (Plaintiff Dep. at 31:15-24.)

8.      Pursuant to Frontier's policies regarding service of hot beverages, the flight attendant was required to offer Plaintiff condiments, a napkin, a stir stick, and a lid for her cup of hot tea. (Rush Decl., ¶ 7.)

9.      Pursuant to both Frontier's policies and industry standards, the flight attendant was not required to serve Plaintiff pre-made hot tea or a made-to-order hot beverage. (*Id.* at ¶ 9.)

10.     At the time of the subject flight, there were no federal regulations that required Frontier to serve Plaintiff a hot beverage in a cup closed with a lid. At that time, there were also no federal regulations that required Frontier to serve Plaintiff a pre-made cup of hot tea or a made-to-order hot beverage. Similarly, currently, there are no federal regulations that require Frontier to serve a passenger a hot beverage in a cup closed with a lid. There are also no federal regulations that require Frontier to serve a passenger a pre-made cup of hot tea or a made-to-order hot beverage. (*Id.* at ¶ 11.)

11.     At the time of the subject flight, there were no federal regulations that prohibited air carriers from serving hot beverages without a lid, not pre-made and not made-to-order. And, there were no federal regulations that prohibited air carriers from serving hot tea by providing

passengers with a cup of hot water, and a tea bag and condiments on the side. (*Id.* at ¶ 12.)

12.    When Plaintiff was served her hot beverage, the subject flight was not experiencing turbulence. The fasten seatbelt sign had been turned off and passengers were informed they could get out of their seats and move about the cabin. Plaintiff characterized this portion of the subject flight as "smooth sailing." (Plaintiff Dep. at 25:9-26:17.)

13.    Prior to and during the subject flight, Frontier did not possess, and was not aware of, any information indicating that a weather system, weather cell, or weather condition which may cause turbulence was located in, or anticipated to be located in, the flight path of the subject flight. Frontier did not receive any reports during or after the subject flight that the flight experienced any kind of turbulence, including light turbulence. (Rush Decl., ¶ 13.)

14.    If Frontier pilots are expecting greater than light turbulence, at least five minutes prior to such turbulence, the pilots are to ensure that the seatbelt sign is on. They are also to make an announcement advising flight attendants and passengers to be seated and to fasten their seat belts.

15.    If Frontier pilots are expecting light turbulence, at least five minutes prior to such turbulence, the pilots, at their discretion, may turn on the seatbelt sign, and, if appropriate, may make an announcement advising passengers to be seated and to fasten their seat belts.

16.    The industry standard permits beverage service during light turbulence. Likewise, Frontier's policies permit beverage service during light turbulence. (Rush Decl., ¶ 14.)

17.    At the time Plaintiff was served her hot beverage, there were no flight conditions that required hot beverage service to be delayed, discontinued, intermittently stopped, or terminated. (*Id.* at ¶ 15.)

18.    During the subject flight, hot beverage service was never delayed, discontinued,

intermittently stopped, or terminated due to flight conditions or turbulence. (Rush Decl. ¶ 15; Plaintiff Dep. at 31:15-34:3.)

19.    Plaintiff testified that she had no knowledge regarding whether the subject flight experienced turbulence at any time after the spill. (Plaintiff Dep. at 37:1-6.)

20.    On February 24, 2016, ten days after the incident, Plaintiff sought medical treatment from her primary care physician, Dr. Frank Reisner, for a cough and skin discomfort from the hot water spill. Dr. Reisner diagnosed Plaintiff with first and second degree burns and prescribed water therapy. Plaintiff attended water therapy from March 4, 2016 until March 17, 2016. She was discharged from water therapy on March 17, 2016 and received no further treatment related to the burns. (Dr. Carson March 10, 2019 Report attached as Exhibit E ("Dr. Carson Report), p. 2-3.)

21.    On March 16, 2016, approximately one month after the subject flight, Plaintiff was again treated by Dr. Reisner, but this time for persistent chest pain. At that visit, Dr. Reisner recommended that Plaintiff be examined by the emergency department at Munroe Regional Medical Center ("Munroe"). While being treated at Munroe, an ultrasound of Plaintiff's left lower extremity showed deep vein thrombosis ("DVT") within her proximal left femoral vein. (Declaration of Dr. Koti attached as Exhibit D. ("Dr. Koti Decl."), ¶ f.)

22.    Dr. Ravi Koti, a board certified hematologist, treated Plaintiff for the DVT. (Dr. Koti. Decl.)

23.    On March 22, 2016, a repeat ultrasound of Plaintiff's left lower extremity showed *no* evidence of DVT. A second repeat ultrasound on November 9, 2016 also showed *no* evidence of DVT. (*Id.* at ¶¶ g, h.)

24.    Further testing by Dr. Koti showed complete resolution of the DVT. (Dr. Koti

Decl.)

25.     Frontier has disclosed Joshua Carson, MD, FACS ("Dr. Carson"), a critical care surgeon, as its medical expert. On March 5, 2019, Dr. Carson performed an independent medical evaluation on Plaintiff. He has reviewed Plaintiff's Complaint, her deposition testimony, her medical records, and her discovery responses. (Dr. Carson Report, p. 1.)

26.     Dr. Koti, Plaintiff's own treating physician, has opined that Plaintiff's DVT was not caused by the hot water spill on the subject flight. (Dr. Koti Decl., ¶¶ r, s.)

27.     Dr. Carson has also opined that Plaintiff's DVT was not caused by the hot water spill on the subject flight. (Dr. Carson Report, p. 7.)

## MEMORANDUM OF LEGAL AUTHORITY

As a federal court sitting in diversity jurisdiction, this Court must apply the substantive law of Florida, the forum state, alongside federal procedural law. *Horowitch v. Diamond Aircraft Indus.*, 645 F.3d 1254, 1257 (11th Cir. 2011).

## I.     STANDARD FOR SUMMARY JUDGMENT

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Branch Banking & Trust Co.*, 119 F.Supp.3d 1328, 1338 (S.D. Fla. 2015) (quoting Fed. R. Civ. P. 56(a)). The parties may support their positions by citation to the record, including *inter alia* depositions, documents, affidavits, or declarations. *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue

of material fact. *Id.* (citing *Shiver v. Chertoff,* 549 F.3d 1342, 1343 (11th Cir. 2008)). Once this burden is satisfied, "the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (citation omitted). Instead, "the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citation omitted). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Id.* at 1339.

## II.   <u>ARGUMENT</u>

**A.   *This Court should grant Frontier's Motion for Summary Judgment because Plaintiff's claim is preempted by the Airline Deregulation Act of 1978.***

"The Airline Deregulation Act was enacted in 1978 as an amendment to the Federal Aviation Act ("FAA") to encourage competition in the aviation industry through deregulation." *Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 659-60 (11th Cir. 2015) (*citing Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). Congress included a preemption provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Id.*; *see also Barbakow v. USAIR, Inc.,* 950 F. Supp. 1145, 1146 (S.D. Fla. 1996). The preemption provision states: "States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (2012).

The Eleventh Circuit has instructed that the preemption clause "is properly afforded an extremely broad scope." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003). In interpreting "service[s]" expansively, the Eleventh Circuit has stated:

> "Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated

> in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, *provision of food and drink*, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these contractual features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Branche,* 342 F.3d at 1256-57 (emphasis added).

To determine whether a claim has a connection with or reference to an airline's prices, routes, or services, a court should look at the facts underlying the specific claim. *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996). If the facts relate to the "provision of food or drink," then the claim has a connection with airline services and pre-emption under 49 U.S.C. § 41713 is mandated. *Branche,* 342 F.3d at 1254.

Here, Plaintiff's claim criticizes the manner in which Frontier serves hot tea to its passengers. Specifically, Plaintiff contends that Frontier should have served her "made-to-order" hot tea, *i.e.*, added the tea bag to the hot water, steeped the tea, discarded the tea bag, and added cream or sugar (as requested) before serving her the beverage, such that she would not have been required to take the lid off the cup and prepare the tea herself. (Plaintiff Dep. at 27:15-19.)

The crux of this claim implicates Frontier's policy for "provision of food and drink," which is clearly a category of service the ADA intended to affect in its promotion of competition amongst air carriers. *See Branche*, 342 F.3d at 1258-59. Some air carriers offer limited food and beverage service and some offer greater options with a more customized approach. If claims like Plaintiff's were not preempted, and air carriers were required to comply with a dizzying number of divergent and stifling standards across the country regarding beverage service, air carriers would stop beverage service altogether instead of using such service to attract customers. *See Mennella v. Am. Airlines, Inc.,* No. 17-21915-CIV, 2019 U.S. Dist. LEXIS 54117, at *15-16

(S.D. Fla. 2019). This is exactly the scenario the ADA sought to prevent in its prohibition on state law challenges to contractual features of service - features which air carriers use to distinguish themselves in a buyer's-choice market, such as allowing customers the option to customize their own hot beverage. *Id.*

Because the procedures that Plaintiff complains about fall within the competitive marketplace that Congress intended to create with the ADA, Plaintiff's claim is preempted. *Id.* at *16; *see also Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005) ("definition of service for ADA preemption purposes … include[s] boarding procedures and baggage handling."); *Gardner v. United States*, 316 F. Supp. 3d 1308, 1318 (D. Utah 2018) ("Elements of the air carrier service include[s] items such as … provision of food and drink … in addition to the transportation itself."); *Joseph v. JetBlue Airways Corp.*, No. 5:11-CV-1387 (TJM/ATB), 2012 U.S. Dist. LEXIS 50974, at *19-26 (plaintiff's tort law claims of false imprisonment, negligence, and negligent infliction of emotional distress "are expressly preempted by the ADA."); *Howard v. Nw. Airlines, Inc.*, 793 F. Supp. 129, 132 (S.D. Tex. 1992) (plaintiff's wrongful death claim based on airline's failure to meet and assist sick, elderly passenger and help him make a connecting flight was preempted).

In sum, the Eleventh Circuit has consistently held that if the facts of a claim relate to the provision of food or drink, then the claim has a connection with airline services and is preempted by the ADA. Here, Plaintiff's claim against Frontier is based on her objection to Frontier's provision of drinks. Specifically, Plaintiff complains of the manner in which Frontier provides hot tea to passengers onboard its flights. This procedure is included within the elements of Frontier's services. Therefore, Plaintiff's claim is preempted by the ADA and this Court should enter summary judgment in favor of Frontier.

**B.**     ***Alternatively, this Court should grant Frontier's Motion for Summary Judgment because there is no evidence Frontier breached any duty owed to her or caused her alleged injuries.***

If this Court finds that Plaintiff's claims are not preempted by the ADA, Plaintiff's claim still fails because there is no evidence that Frontier breached any standard of care or caused her alleged injuries. In Florida, "[a] negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. Dist. Ct. App. 2015).

Here, Plaintiff alleges that during the subject flight, a Frontier flight attendant served her a cup of hot water closed with a lid, and a tea bag and sugar packets on the side. (Plaintiff Dep. at 27:4-29:17.) Plaintiff alleges that she spilled the hot water on herself while preparing her tea. (*Id.* at 29:18-29:24.) And Plaintiff contends that she is entitled to damages from Frontier because it breached a duty it owed to her and caused her to sustain injuries.

To support her case, Plaintiff testified about how the incident occurred. At her deposition she explained that during the subject flight, she ordered a cup of hot tea from a flight attendant, as opposed to her usual coffee, because she was not feeling well and wanted something to soothe her throat. (Plaintiff Dep. at 27:4-29:17.) The flight attendant asked if Plaintiff wanted cream and sugar to add to her hot tea. (*Id.* at 27:10-13.) Plaintiff responded that she only wanted sugar. *Id.* The flight attendant handed Plaintiff a cup of hot water closed with a lid and a teabag and a sugar packet on the side. (Plaintiff Dep. at 27:4-29:17.)

At the time the flight attendants were conducting beverage service, flying conditions could not have been better. Plaintiff described the flight at that point as "smooth sailing." (Plaintiff Dep. at 23:12-25:20.) She could not recall any turbulence after the incident. (*Id.* at

37:1-6.) After receiving the covered cup of hot water from the flight attendant, Plaintiff placed it in the cup holder on her tray table, which she had already placed in the down position. (*Id.* at 26:6-29:17.) The cup was insulated and Plaintiff does not remember it feeling hot to touch. (*Id.* at 26:6-29:17.) After Plaintiff placed the cup of hot water onto her tray table, she removed the lid from the cup, and "then something jerked and then it just - [she] lost control of it and it came, you know, flying and pouring into [her] lap." (*Id.* at 29:18-29:24.)

Plaintiff's foregoing testimony is the entirety of her evidence against Frontier. Plaintiff did not issue written discovery to Frontier relating to the subject flight, the incident, Frontier's policies and procedures for service of hot beverages, or the temperature of the water she was served. She did not retain any experts to provide testimony regarding industry standards or to opine that Frontier breached the applicable standard of care. She did not depose any witnesses, including the flight attendants and pilots for the subject flight, Frontier's flight attendant training instructors, or Frontier's corporate representatives. She has not presented any evidence on flight conditions, other than her own testimony that it was a typical flight and "smooth sailing" while the flight attendants were conducting beverage service. (Plaintiff Dep. at 23:12-25:20.) Most revealing is that Plaintiff has failed to provide any evidence even remotely suggesting that Frontier caused her injuries. In fact, she testified that she took the cup from the flight attendant and had the cup in her possession when she "lost control of it … and [it] pour[ed] into [her] lap." (*Id.* at 29:18-29:24.)

In sum, Plaintiff has not presented any evidence to support her claim that Frontier breached any duty it owed her or caused her injuries. As such, Plaintiff will not be able to present this Court with any genuine issue of material fact which would preclude summary judgment in favor of Frontier.

In contrast, Frontier has presented evidence to prove that it met the standard of care and did not cause Plaintiff's injuries. As to the standard of care, the common industry practice is to serve hot beverages *without* a lid and with condiments on the side, and allow customers to prepare beverages to their taste and preferences. (Rush Decl., ¶¶ 7, 9, 11, 12.) Frontier's practice mirrors the industry standard to the extent Frontier serves hot beverages with condiments on the side and allows passengers to customize their beverages. Frontier *exceeds* industry standards, however, in that it serves hot beverages in cups closed with a lid. *Id.* Furthermore, at the time of the incident, and currently, there were no federal regulations that required air carriers to serve a passenger a pre-made cup of hot tea or a made-to-order hot beverage. *Id.* And why would there be such a regulation? Mandating that air carriers serve only pre-made or made-to-order hot beverages would do nothing to enhance passenger safety and would be anathema to promoting competition.

Not only are the facts fatal to Plaintiff's claim, but the law is as well. In *Medina v. Am. Airlines, Inc.*, a flight attendant served the plaintiff a cup of hot coffee without a lid. No. 02-22133-CIV-COOKE/BROWN, 2006 U.S. Dist. LEXIS 82805 (Nov. 13, 2006 S.D. Fla. 2006). "When the plaintiff attempted to pick up the cup of coffee with his right hand, he tried to take it to [his] mouth, but it was so hot," his hand started to burn which caused him to spill the coffee onto his lap. *Id.* at *3. The plaintiff claimed the airline was negligent in serving coffee too hot. But, the court concluded the airline had "met its burden of proving not only that [the plaintiff] was comparatively negligent in causing the accident, but he was the sole proximate cause of same." *Medina*, No. 02-22133-CIV-COOKE/BROWN, 2006 U.S. Dist. LEXIS 82805 at *5.

As in *Medina*, here, Plaintiff requested hot tea and was aware that it was not pre-made. She made the decision to remove the lid from the cup, which was not in and of itself unsafe. In

the process of making the tea, Plaintiff spilled the beverage on herself, which was solely her fault. To hold Frontier responsible under these circumstances would mean, for all intents and purposes, that airlines are strictly liable for all injuries sustained from beverages, regardless of the facts. That is not the law in Florida, or anywhere. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502-03 (Fla. 1992) ("[A] defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.")

Next, in *Colbert v. Sonic Rests., Inc.,* the plaintiff purchased a cup of coffee at a drive-through. 741 F. Supp. 2d 764, 766 (W.D. La. 2010). The plaintiff made a special request to the order taker that the drive-through add cream and artificial sweetener when preparing his coffee. *Id.* The employee, however, handed the plaintiff a cup of coffee along with cream and artificial sweetener on the side instead of adding it to the coffee. *Id.* After receiving the coffee, the plaintiff pulled forward and placed his car in park. *Id.* Sitting in his car and holding the cup with his right hand, the plaintiff used his left hand to remove the lid so he could add the cream and sweetener. *Id.* While doing so, the hot coffee splashed on his right hand and caused an instantaneous reaction causing the coffee to spill into his lap. *Id.* The plaintiff claimed he sustained second-degree burns through his blue jeans in his groin area, stomach/abdomen area, and thigh. *Id.* Similar to Plaintiff's allegations here, the plaintiff claimed the drive-through was negligent and failed to warn him the coffee was hot, failed to keep its coffee at a proper temperature, and failed to make sure its coffee cups were in a safe condition. *Id.*

The court granted the drive-through's motion for summary judgment, ruling there was no evidence that the temperature of the coffee exceeded industry standards, and temperature of coffee cannot be presumed to be unreasonably dangerous solely from the fact that an accident producing injury occurred. *Id.* at 769. As in *Sonic*, here, Plaintiff cannot meet her burden of

proof simply by making a conclusory statement that the water she was served was unreasonably hot. Rather, she must affirmatively prove that Frontier violated the industry standard, which she has not done, and cannot do, in this case. *See Greene v. Boddie-Noell Enters.*, 966 F. Supp. 416, 419 (W.D. Va. 1997) (plaintiff failed to meet her "obligation to demonstrate that she had proof that the defendant breached a recognizable standard."); *Olliver v. Heavenly Bagels, Inc.,* 189 Misc. 2d 125, 128 (Sup. Ct. 2001) ("plaintiff has failed to provide evidence from which a jury could conclude that the subject coffee was unreasonably hot. That it caused second degree burns does not suffice."); *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 656-57 (7th Cir. 1998) (summary judgment affirmed because the law "expects consumers to educate themselves about the hazards of daily life - of matches, knives, and kitchen ranges, of bones in fish, and of hot beverages - by general reading and experience, knowledge they can acquire before they enter a mini mart to buy coffee.")

In sum, Plaintiff has no evidence to support her negligence claim. The facts and her own testimony belie that Frontier caused the incident or her injuries. Frontier's policies regarding service of hot beverages not only comply with, but exceed, industry standards. The law provides that claims such as Plaintiff's should be dismissed where the plaintiff cannot meet her obligation of proving that the defendant breached a recognizable standard. Therefore, this Court should grant Frontier's motion for summary judgment.

**C.      *Alternatively, this Court should grant Frontier's partial motion for summary judgment because there is no evidence that the alleged incident caused Plaintiff's DVT.***

If this Court finds that Plaintiff's claims are not preempted by the ADA, or that there is a genuine dispute as to material facts regarding Plaintiff's negligence claim, Plaintiff's DVT claim still fails because there is no evidence to support a causal connection between the incident and the DVT. "In negligence actions Florida courts follow the more likely than not standard of

causation and require proof that the negligence probably caused the plaintiff's injury." *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 Sp. 2d 1015, 1018 (Fla. 1984). "Causation is an essential element of negligence, and a plaintiff is entitled to recover only for injury, loss, or damage caused by a defendant's negligence." *Meyers v. Shontz*, 251 So. 3d 992, 1003 (Fla. Dist. Ct. App. 2018). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Lopez v. Fla. Power & Light Co.*, 501 So. 3d 1339, 1342 (Fla. Dist. Ct. App. 1987).

Here, Plaintiff alleges the DVT was caused by the incident. Specifically, Plaintiff alleges the DVT was caused by her burns and "how immobile [she] was during [her] burn treatment." (Plaintiff Dep. at 73:7-11.) But, apart from her own speculation and conjecture, Plaintiff has no evidence to support her claim that the incident or the resulting burns caused the DVT. Plaintiff only disclosed her treating physicians in her Fed. R. Civ. P. 26(a)(2) disclosure. (Plaintiff's Rule 26(a)(2) disclosure attached as Exhibit F.) As to each of her treating physicians, Plaintiff disclosed: "No report will be furnished as a medical expert treating physician has not [been] retained by, employed by, or otherwise subject to control by Plaintiff." *Id.* Thus, no medical expert will support Plaintiff's claim that the incident caused the DVT. In fact, Plaintiff's own treating physician, Dr. Koti, affirmed that he could not state the cause of the DVT with a reasonable degree of medical probability. (Dr. Koti. Decl., ¶r.). As such, Plaintiff has no evidence to support her claim that the incident caused the DVT.

In contrast, Frontier's medical expert, Dr. Carson, has opined that "the DVT was not at all related to her burn injury." (Dr. Carson report, p. 7.) Dr. Carson elaborated that there is no connection between the DVT and the burn. *Id.* He noted that anatomically, the DVT is

completely separate from the areas of burn insofar as Plaintiff's burns were in the superficial aspect of her skin and the DVT, by definition, was located in the deep venous system, many layers under the skin, fat, and soft tissue below the burn. *Id.* Further, the DVT was located in the proximal femoral vein, an area far higher up in the thigh than the area where Plaintiff was burned. *Id.* Dr. Carson also refuted Plaintiff's contention that her alleged decreased mobility as a result of the incident caused the DVT. He noted that Plaintiff did not find the burns particularly painful after the injury. (Dr. Carson report, p. 7.) Indeed, she was able to go to work the next day. (*Id.* at p. 8; Plaintiff Dep. at 53:7-12.) Plaintiff complained of difficulty sitting for prolonged periods which required her to frequently stand up or shift positions. However, Dr. Carson noted that this is exactly the kind of mobility that is recommended for patients to avoid DVT. (Dr. Carson report, p. 8.) Plaintiff's description of actively moving is evidence she was not immobile and that the incident did not cause the DVT. *Id.*

In sum, Plaintiff has no proof to support her claim that the incident or the resulting burns caused the DVT. To the contrary, Frontier has presented evidence that the incident did not cause, and could not have caused, the DVT. Therefore, this Court should grant Frontier's motion for partial summary judgment as to the issue of Plaintiff's DVT claim.

### III.   CONCLUSION

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Motion for Summary Judgment and hold that Plaintiff's claim is preempted by the Airline Deregulation Act of 1978. Alternatively, this Court should grant Frontier's Motion for Summary Judgment because there is no evidence that Frontier breached any duty owed to Plaintiff or that Frontier caused Plaintiff's alleged injuries. Further in the alternative, this Court should enter partial summary judgment on Plaintiff's DVT claim because

there is no evidence the condition was caused by the subject incident. Frontier further seeks any additional relief this Court deems necessary and proper.

Date: June 7, 2019                                    Respectfully submitted,

                                                     **FRONTIER AIRLINES, INC.**

                                                     /s/ Brian *T. Maye*
                                                     One of Its Attorneys

                                                     Brian T. Maye (admitted *pro hac vice*)
                                                     Tara Shelke (admitted *pro hac vice*)
                                                     ADLER MURPHY & McQUILLEN LLP
                                                     20 South Clark Street, Suite 2500
                                                     Chicago, Illinois 60603
                                                     Phone: (312) 345-0700
                                                     Email: bmaye@amm-law.com
                                                            tshelke@amm-law.com

                                                     AND

                                                     Dennis R. O'Connor (FBN: 376574)
                                                     Derek J. Angell (FBN: 73449)
                                                     O'CONNOR & O'CONNOR, LLC
                                                     800 North Magnolia Avenue, Suite 1350
                                                     Orlando, Florida 32803
                                                     Phone: (407) 843-2100
                                                     Email: doconnor@oconlaw.com
                                                            dangell@oconlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, I caused the foregoing to be electronically filed with the United States District Court for the Middle District of Florida, Orlando Division, using the CM/ECF System.

/s/ *Tara Shelke*
Counsel for Defendant Frontier Airlines, Inc.