# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

VANESSA NEWPORT,

    *Plaintiff*,

v.              Case No.: 6:18-cv-536-Orl-18GJK

FRONTIER AIRLINES, INC.,      District Judge G. Kendall Sharp
                Magistrate Judge Gregory J. Kelly

      *Defendant*.

_____/

## **DEFENDANT FRONTIER AIRLINES, INC.'S MOTION *IN LIMINE***

Defendant FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, hereby files this Motion *in Limine* in advance of trial:

This is a personal injury action arising out of an incident that occurred on February 14, 2016, onboard Frontier Flight 1220 from Las Vegas, Nevada to Orlando, Florida. Plaintiff alleges injuries and damages after she spilled a hot beverage on herself during the flight. Plaintiff asserts a single count of negligence against Frontier. (Doc. #2.) Frontier moves *in limine* to preclude Plaintiff and her attorneys, representatives, and witnesses from making reference to, introducing into evidence, or otherwise directly or indirectly referring to:

  a.  Frontier's liability insurance at trial;

  b.  The names and locations of the law firms representing the Parties;

  c.  Offers of compromise and settlement made by Frontier to Plaintiff;

  d.  Frontier's net worth and financial status;

  e.  The "McDonald's hot coffee" case formally known as *Liebeck v. McDonald's Restaurants, P.T.S., Inc.*, filed in 1993 in the United States District Court for the District of New Mexico;

f.   Expert witness testimony from Plaintiff's treating physicians;

g.   Plaintiff's unsupported theory that the alleged incident caused her to develop and suffer a deep vein thrombosis ("DVT");

h.   Plaintiff's unsupported theory that Plaintiff will require future medical care for her alleged injuries.

i.   Plaintiff's unsupported theory that she suffered nerve damage as a result of the alleged incident;

j.   Statements from other passengers on the subject flight;

k.   Plaintiff's unsupported opinion that the beverage she spilled on herself was too hot, scalding hot, or dangerously hot;

l.   Plaintiff's unsupported theory that Frontier violated the standard of care in regard to the manner of service or that it should not have served hot beverages on the subject flight following early turbulence; and

m.   Plaintiff's unsupported assertion that she was unable to get proper medical attention to address her alleged injuries.

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Motion *in Limine* and enter an Order *in limine* precluding Plaintiff and her attorneys, representatives, and witnesses from making any direct or indirect reference to, or presenting to the jury, evidence and argument identified herein.

### *Statement of Compliance with Local Rule 3.01(g)*

On August 16, 2019, Frontier's counsel conferred with Plaintiff's counsel regarding the issues addressed in this motion. Plaintiff's counsel stated she will likely agree to some issues and will oppose others, after Frontier files this Motion *in Limine* with the Court. Pursuant to Local Rule 3.01(b), Plaintiff will file her opposition within 14 days, by September 3, 2019.

### *Memorandum of Law*

Motion *in limine* is used "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."

*Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "The purpose of a motion *in limine* is to enable the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial without lengthy argument at, or interruption of, the trial." *Dover v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-11531(SAS), 2014 U.S. Dist. LEXIS 133181, at *6 (M.D. Fla. Sept. 22, 2014).

Frontier moves *in limine* to exclude the following prejudicial evidence and argument:

**A.  This Court should exclude any evidence regarding, and direct or indirect reference to, Frontier's liability insurance.**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. In Florida, "counsel is [not] permitted to suggest to the jury that insurance coverage will be available to pay any judgment which might be awarded against the insured defendant." *Pierce v. Smith*, 301 So. 2d 805, 807 (Fla. Dist. Ct. App. 1974). "In fact, the [Florida] Supreme Court has held that the jury should not be told of the amount of the insurance coverage. *Id.* (citing *Stecher v. Pomeroy*, 253 So. 2d 421, 423 (Fla. 1971)).

Plaintiff may attempt to introduce evidence regarding Frontier's liability insurance. Frontier objects to the introduction of such evidence because such attempt by Plaintiff can only be to unfairly prejudice Frontier. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making direct or indirect reference to, Frontier's liability insurance at trial.

**B.      This Court should exclude any evidence regarding, and direct or indirect reference to, the names and locations of any law firms representing the Parties.**

"Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Plaintiff may attempt to refer to the names or locations of the law firms representing the Parties in this litigation. Frontier objects to all such references because such attempt by Plaintiff would only be to unfairly prejudice Frontier. And, such attempt would serve no purpose other than to prejudice the jury by attempting to persuade them via name or locale recognition which would result in impermissible bias. The names and locations of the law firms representing the Parties will not assist the jury in determining the issues of liability or damages and are therefore not probative of any issue in dispute. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making direct or indirect reference to, the names and locations of any law firms representing the Parties.

**C.      This Court should exclude any evidence regarding, and direct or indirect reference to, offers of compromise or settlement made by Frontier to Plaintiff.**

"Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim …." Fed. R. Evid. 408(a). "Courts uniformly exclude evidence created for the purpose of facilitating settlement negotiations." *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, No. 8:06-cv-421-T-33EAJ, 2008 U.S. Dist. LEXIS 116680, at *3-4 (M.D.

Fla. Aug. 28, 2008). "[I]t is also appropriate and contemplated by [Fed. R. Evid. 408] that courts exclude evidence which clearly communicates an offer to settle a claim." *Id.* at *4.

Plaintiff may attempt to introduce evidence regarding settlement offers made by Frontier to Plaintiff or pre-trial settlement discussions among the Parties. Frontier objects to the admission of such evidence because such attempt by Plaintiff would only be to unfairly prejudice Frontier. Such attempt would serve no purpose other than to prejudice the jury by attempting to show that Frontier is liable for Plaintiff's alleged injuries and damages. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making direct or indirect reference to, any settlement offers made by Frontier to Plaintiff or any pre-trial settlement discussions among the Parties.

**D.      This Court should exclude any evidence regarding, and direct or indirect reference to, Frontier's net worth and financial status.**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, Plaintiff has not asserted a claim for punitive damages. (Doc. #2.) Therefore, Frontier's net worth and financial status are not relevant to the issues of liability and damages in this litigation. *See U.S. EEOC v. W&O, Inc.*, 213 F.3d 600, 617 (11th Cir. 2000) (wealth and size of defendant are considered when determining whether punitive damages award is reasonable). And, even if evidence of Frontier's net worth or financial status were deemed relevant, all such evidence should be excluded because its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, and misleading the jury. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Frontier's net worth or financial status.

**E.    This Court should exclude any evidence regarding, and direct or indirect reference to, the "McDonald's hot coffee" case formally known as _Liebeck v. McDonald's Restaurants, P.T.S., Inc._**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Plaintiff may attempt to refer to the "McDonald's hot coffee" case formally known as _Liebeck v. McDonald's Restaurants, P.T.S., Inc._, filed in 1993 in the United States District Court for the District of New Mexico. Frontier objects to any such reference because such attempt by Plaintiff would only be to unfairly prejudice Frontier. Such attempt by Plaintiff would serve no purpose other than to intentionally mislead the jury into believing that Plaintiff's alleged injuries are far more significant that indicated by the objective medical evidence. And, such attempt by Plaintiff would needlessly taint the jury with impermissible bias.

Unlike _Liebeck_, here, Plaintiff has alleged a negligence claim against Frontier. (Doc. #2.) Plaintiff has not conducted any discovery regarding the temperature of the hot beverage she was served. Plaintiff does not have any evidence regarding the temperature of the hot beverage she was served. Plaintiff also does not have any expert witnesses to testify regarding industry standards pertaining to service of hot beverages. (Doc. #38, p. 4.) And Plaintiff has not asserted a

claim for punitive damages. (Doc. #2.) Reference to the "McDonald's hot coffee" case is not probative of any issues in dispute in this case. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, the "McDonald's hot coffee" case.

**F.      This Court should exclude all expert witness testimony from Plaintiff's treating physicians whom she has designated as experts.**

On June 11, 2018, this Court entered its Case Management and Scheduling Order which, *inter alia*, ordered Plaintiff to disclose her expert reports by February 15, 2019. (Doc. #15.) Having not retained any experts, on February 15, 2019, Plaintiff filed her Rule 26(a)(2) Designation of Experts. (Doc. #27.) Plaintiff's Designation of Experts fails Fed. R. Civ. P. 26(a)(2)(C). Specifically, Plaintiff's disclosure of her treating physicians as "Treating Experts" merely recites boilerplate language. (Doc. #27.) It does not state the subject matter on which the witnesses are expected to present evidence and does not include a summary of the facts and opinions to which the witnesses are expected to testify. *Id.*; *see* Fed. R. Civ. P. 26(a)(2)(C); *see also Leibson v. TJX Co., Inc.*, No. 8:17-cv-1947-T-33TGW, 2018 U.S. Dist. LEXIS 137054, at *6 (M.D. Fla. Aug. 14, 2018) ("Typically treating physicians are … required to satisfy the lower standard of [Fed. R. Civ. P.] 26(a)(2)(C)" which requires "a party to submit an expert disclosure … stat[ing] the subject matter on which the witness is expected to present evidence … and a summary of the facts and opinions to which the witness is expected to testify.")

On April 17, 2019, Frontier's counsel notified Plaintiff's counsel that Plaintiff's expert witness disclosure was deficient under Fed. R. Civ. P. 26(a)(2)(C) and requested that Plaintiff supplement her disclosure to remedy the deficiencies. To date, Plaintiff has not disclosed a summary of the facts and opinions to which her treating physicians are expected to testify at trial. Thus, Plaintiff's expert witness disclosure consists of a mere recitation that her treating

physicians were "involved in the examination, diagnosis, care, or treatment of Plaintiff," and fails to provide the facts and opinions to which the treating physicians are expected to testify. Frontier also notes that Plaintiff indicated in the Joint Final Pretrial Statement that she does not have any expert witnesses. (Doc. #38, p. 4.) Plaintiff's treating physicians should be barred from providing opinion testimony at trial.

**G.     This Court should exclude all testimony and argument that the alleged incident caused Plaintiff to develop and suffer a deep vein thrombosis ("DVT").**

At her deposition on November 13, 2018, Plaintiff made a number of self-serving, unsupported, and inadmissible statements that the alleged incident caused her to develop and suffer a deep vein thrombosis ("DVT"). (Plaintiff's deposition attached as Exhibit A.) Specifically, Plaintiff testified:

> Q.     Okay. Do you have any idea what caused the blood clot?
> A.     I thought it was contributed to my burns [sic] and sitting on the plane and not being immobile [sic] and how immobile I was during my burn treatment.
> …
>
> Q.     Okay. So in your mind, at least, the blood clot was related to the hot water spill on the plane?
> A.     Yes.

(Exhibit A, 73:7-22.)

But, Plaintiff's unsupported theory is belied by her own deposition testimony where she also testified:

> Q.     Okay. And on this particular day, which I believe is March 16th, 2016, did you attribute the chest pains and the other symptoms that you were feeling to the hot tea spill on February 14th?
> A.     I did not attribute – I just didn't know what was wrong. I didn't feel well.
> …
>
> Q.     Okay. Did they ever tell you what caused the blood clot?
> A.     No.

(Exhibit A, 64:15-20; 72:24-73:1.)

"When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean Cruises Ltd.*, 711 Fed. App'x 952, 954 (11th Cir. 2017). "This rule may apply even where there is a close temporal relationship between the incident and the injury." *Aponte v. Royal Caribbean Cruises, Ltd.*, No. 15-21854-Civ-Scola, 2019 U.S. Dist. LEXIS 33418, at *9 (S.D. Fla. Feb. 26, 2019).

Here, Plaintiff does not have any medical documentation or medical testimony to support her personal theory the alleged incident caused her to develop and suffer a DVT. Plaintiff is not an expert witness.[1] She has no knowledge, skill, experience, training, or education in the field of medicine. (Exhibit A, 10:11-11:4; 88:2.) And she does not have any expert witnesses to opine on the cause of the DVT. (Doc. #38, p. 4.)

Instead, Dr. Ravi Koti, one of Plaintiff's own treating physicians, has submitted a Declaration in which he affirmed, "I am unable to state the cause [of Plaintiff's DVT diagnosed on March 16, 2016] with a reasonable degree of medical probability." (Dr. Koti Declaration attached as Exhibit B.) Frontier has disclosed Dr. Koti as one of the witnesses it intends to call to testify at trial. (Doc. #38, p. 13.)

Likewise, Dr. Joshua Carson, Frontier's medical expert opined in his written report, "It is my opinion that … [t]he development of the DVT was not at all related to her burn injury." (Doc. #38, p. 25.) Dr. Carson explained, "there is no connection" between the DVT and the burn

---

[1] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

because "anatomically, the clot is completely separate from the areas of burn. The patient's burn is in the superficial aspect of her skin. A deep venous thromboembolism is by definition located in the deep venous system. This lays many layers below the skin, underneath the skin, fat, and soft tissue below the burn. Furthermore, [Plaintiff's] DVT was located in the proximal femoral vein, an area that is far higher up in the thigh than the area where she was burned." *Id.* Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Plaintiff's unsupported assumption that the alleged incident caused her to develop and suffer a DVT.

**H.** ***This Court should exclude all testimony and argument that Plaintiff will require future medical care for her alleged injuries.***

At her deposition on November 13, 2018, Plaintiff made a number of self-serving, unsupported, and inadmissible statements regarding her apparent need for future medical care for her alleged injuries. Specifically, Plaintiff testified:

> Q.  Okay. And beyond the two dates in March, March 17, 2016 at Express Care and March 11, 2016 at Munroe Regional Medical Center, have you had any further treatment related to the burns?
> A.  No. Not that – to my recollection.
>
> Q.  Okay.
> A.  I do plan to have some more treatment.
>
> Q.  What is the treatment that you plan to have?
> A.  Well, since they told me that it would be – that, you know, all I can do is surgery at this point because my bottom's never completely healed, I would want to pursue getting the surgery.
>
> Q.  What kind of surgery would it be?
> A.  He didn't – I would think some skin grafting or something would be necessary, but I don't know. I'm not a medical doctor.

(Exhibit A, 87:11-98:2.)

Plaintiff also testified, "I'm going to need surgery, most likely skin grafting, and I haven't arranged that yet." *Id.* at 37:24-25. She further testified that she did not have any medical appointments where she planned to schedule such surgery, and that although she "would plan to do it in the near future[, she could not] give … a specific date." *Id.* at 88:14-20.

But, Plaintiff does not have any medical documentation or medical testimony to support her theory that she will require future medical care for her alleged injuries. Plaintiff is not an expert witness.[2] She has no knowledge, skill, experience, training, or education in the field of medicine. (Exhibit A, 10:11-11:4; 88:2.) And she does not have any expert witnesses to testify regarding her apparent need for future medical care. (Doc. #38, p. 4.)

Dr. Joshua Carson, Frontier's medical expert has rebutted Plaintiff's unsupported belief that she will require further medical care. In his written report, Dr. Carson stated, "It should be noted that there is no role for surgical treatment of these wounds at this point in time, nor do I anticipate the need for any such treatment in the future. I know [Plaintiff] mentions that she has been given reason to believe that she may require surgery in the future related to a potential skin graft. I see absolutely no indication for skin grafting of these wounds as they are already healed and the scarring expect[ed from] the skin graft would likely be significantly more morbid and problematic." (Doc. #38, p. 25.) Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Plaintiff's baseless assumption that she will require future medical care for her alleged injuries.

**I.**     ***This Court should exclude all testimony and argument that Plaintiff suffered "nerve damage" as a result of the alleged incident.***

At her deposition on November 13, 2018, Plaintiff made a number of self-serving, unsupported, inaccurate, and inadmissible statements that she suffered "nerve damage" as a

---

[2] *See* note 1.

result of the alleged incident. Specifically, Plaintiff testified: "To be honest with you, it seems like I – I never understood it – but it was like that I had – I didn't even know my bottom was burnt. I've been told it was the degree of the nerve damage, so I did not feel that pain. (Exhibit A, 45:16-20.) She also testified: "I did have severe pain, I know, when the water – but I don't – it was excruciating pain, but I don't remember any of the pain. I don't know if I was in shock. I was explained that there was a degree of nerve damage from the burns …." *Id.* at 46:6-10.

Plaintiff does not have any medical documentation or medical testimony to support her claim that she suffered nerve damage as a result of the alleged incident. Plaintiff is not an expert witness.[3] She has no knowledge, skill, experience, training, or education in the field of medicine. (Exhibit A, 10:11-11:4; 88:2.) And she does not have any expert witnesses to testify that she suffered any nerve damage. (Doc. #38, p. 13, 4.)

Additionally, Plaintiff's claim that Dr. Frank Reisner told her she suffered nerve damage is inadmissible hearsay. "Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is "a statement offered in evidence to prove the truth of the matter asserted." *United States v. Quinn*, 123 F.3d 1415, 1420 (11th Cir. 1997).

Further, Dr. Joshua Carson, Frontier's medical expert examined Plaintiff and noted in his written report that the photographs produced by Plaintiff herself "show pink, living tissue at the surface of these wounds, which indicates intact nerve endings." (Doc. #38, p. 24.) Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or

---

[3] *See* note 1.

making any direct or indirect reference to, Plaintiff's unsupported and inadmissible statements that she suffered nerve damage as a result of the alleged incident.

**J.**    ***This Court should exclude all testimony and argument that another passenger on the subject flight thought the beverage Plaintiff spilled on herself was too hot.***

At her deposition on November 13, 2018, Plaintiff testified that the male passenger seated next to her on the subject flight thought the beverage Plaintiff spilled on herself was too hot. Specifically, Plaintiff testified: "He made a comment, I can't believe how hot that water was" and "He never – only mentioned that he couldn't believe how hot the water was from the couple little splashes that he had." (Exhibit A, 35:9-10; 35:17-19.)

Plaintiff's testimony regarding the male passenger's statements to her is inadmissible hearsay. "Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is "a statement offered in evidence to prove the truth of the matter asserted." *Quinn*, 123 F.3d 1415, 1420 (11th Cir. 1997). Plaintiff has not disclosed the male passenger as a witness she intends to call to testify at trial. (Doc. #38, p. 13.) Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, other passengers' thoughts that the beverage Plaintiff spilled on herself was too hot.

**K.**    ***This Court should exclude all testimony and argument that the beverage Plaintiff spilled on herself was too hot, scalding hot, or dangerously hot.***

In her general statement of the case in the Joint Final Pretrial Statement, Plaintiff asserted that Frontier "negligently served [her] a cup of scalding hot water and an unused tea bag so that [she] had to make her own tea." (Doc. #38, p. 2.) She added, [Frontier] failed to warn [her] of the dangerously high temperature of the hot water." *Id.*

Apart from her inflammatory, self-serving, and unsupported assertions, Plaintiff does not have any documentation or testimony to support her position that the beverage Frontier served her was hotter than the law allows. Plaintiff herself is not an expert witness.[4] She has no knowledge, skill, experience, training, or education in the field of thermodynamics. (Exhibit A, 10:11-11:4.) And she does not have any expert witnesses to opine on the temperature at which her beverage should have been served. (Doc. #38, p. 4.) Furthermore, Plaintiff has not conducted any discovery regarding the temperature of the hot beverage she was served. She does not have any evidence regarding the temperature of the hot beverage she was served. Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Plaintiff's unsupported conjecture that the beverage she spilled on herself was too hot, scalding hot, or dangerously hot.

**L.** ***This Court should exclude all testimony and argument that Frontier violated the standard of care in regard to the manner of service or that it should not have served hot beverages on the subject flight following early turbulence.***

Plaintiff's pleadings are replete with assertions and allegations such as the one in her general statement of the case in the Joint Final Pretrial Statement that "During the flight to Orlando, Plaintiff ordered a hot tea, believing she would be served a pre-made hot tea. Instead, [Frontier] negligently served [her] a cup of scalding hot water and an unused tea bag so that Plaintiff had to make her own tea." (Doc. #38, p. 2.) Plaintiff's assertion that Frontier should have served her pre-made hot tea, *i.e.*, the very crux of her lawsuit against Frontier, is baseless and unfounded.

As with all her theories against Frontier, Plaintiff does not have any documentation or testimony to support her position that Frontier should have served her pre-made hot tea. Plaintiff

---

[4] *See* note 1.

herself is not an expert witness.[5] She does not have any fact or expert witnesses to testify on industry standards, service of hot beverages onboard flights, or her theory Frontier should have served her pre-made hot tea. (Doc. #38, p. 4.) Plaintiff has not conducted any discovery regarding industry standards pertaining to service of hot beverages, onboard flights or otherwise. She does not have any evidence regarding the industry standard for service of hot beverages, onboard flights or otherwise.

At the time of the alleged incident (and currently), there were no federal regulations which required Frontier to serve passengers pre-made hot beverages. (Doc. #33-2, ¶ 11.) At that time, there were also no federal regulations which required Frontier to serve passengers hot beverages in cups covered with a lid. *Id.* Under either industry standards or Frontier's own policies, Frontier was not required to serve Plaintiff pre-made hot tea. *Id.* at ¶ 9. Indeed, Frontier does not serve pre-made beverages because its passengers prefer to make their own beverages, allowing passengers to prepare beverages to their liking is industry standard, and Frontier would not have the staff, time, or resources to carry out pre-made beverage service. *Id.* at ¶ 5.

Plaintiff also contends in her pleadings that Frontier "failed to warn [her] of … oncoming turbulence that would interfere with [her] ability to safely make her tea." (Doc. #38, p. 2.) But her position that the subject flight encountered turbulence after she was served her hot beverage is unsupported. There is no evidence in the record that Frontier was aware of any "oncoming turbulence" prior to serving Plaintiff her hot beverage. Plaintiff does not have any documentation or testimony to support these allegations. She has not conducted any discovery regarding whether weather systems, weather cells, or weather conditions were located in, or anticipated to be located in, the path of the subject flight. She does not have any evidence that the subject flight

---

[5] *See* note 1.

encountered turbulence after she was served her hot beverage. Indeed, Plaintiff herself testified

only that there was turbulence in the beginning of the flight. Specifically, she testified:

> Q.   Okay. The same with respect to any announcements in that early portion
>       of the flight, from the time you boarded until the time of the incident?
> A.   I remember them, yes.
>
> Q.   Okay. What kinds of announcements were they?
> A.   Well, we had to stay in our seat. We did, in the beginning of the trip, have
>       turbulence and the usual how to put your mask and all the safety -
>
> Q.   Okay. When you say "stay in your seat," is that –
> A.   Seat belt on.
>
> Q.   Okay. And that would have been until the aircraft reached cruising
>       altitude?
> A.   And a little longer, I do believe.
>
> Q.   What kind of turbulence was it?
>
> A.   Just typical what you have on an airline

(Exhibit A, 23:17-24:13.)

She then testified:

> Q.   Okay. Do you have an idea of how long the turbulence lasted?
> A.   No.
>
> Q.   But at some point, the aircraft came out of turbulence and it was smooth
>       sailing, correct?
>
> A.   It was – they said, Now you can get – you know, release your seat belts,
>       go to the bathroom and stuff, yes.
>
> Q.   Okay. And beverage service only began after that announcement was
>       made –
> A.   After that announcement, yes.

*Id.* at 25:6-16.

This is the entirety of Plaintiff's evidence that the subject flight encountered turbulence.

Notably, the subject flight encountered turbulence after takeoff, before it reached cruising

altitude, but beverage service began well after the aircraft had cleared the "typical turbulence" at

the beginning of the flight. Frontier has no reports that the subject flight experienced any kind of turbulence, including light turbulence. (Doc. #33-2, ¶ 13.) And even if the subject flight had experienced light turbulence, it would not have been improper for Frontier to provide in-flight beverage service during such turbulence. *Id.* at ¶ 14. In this respect, Plaintiff should be precluded from relying on the Department of Transportation Cabin Safety Guideline attached as Exhibit A to her Response to Frontier's Motion for Summary Judgment. (Doc. #35-1.) Any reliance on those guidelines is misplaced because they are dated March 5, 2019, almost three years after the alleged incident occurred. *Id.* Plaintiff cannot lay proper foundation for the guidelines. And, the guidelines pertain to circumstances which were simply not present at the time of the alleged incident. (Doc. #33-2, ¶ 15.) Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Plaintiff's unsupported conjecture that Frontier violated the standard of care in regard to the manner of hot beverage service or that it should not have served hot beverages on the subject flight following early turbulence.

**M.**     ***This Court should exclude all testimony and argument that Plaintiff was unable to get proper medical attention to address her alleged injuries.***

Plaintiff's Complaint and her general statement of the case in the Joint Final Pretrial Statement assert that "Plaintiff was unable to get proper medical attention to address her severe burns until the flight landed hours later." (Doc. #2, ¶ 13; Doc. #38, p. 3.) However, Plaintiff has not presented any evidence regarding the "proper medical attention" she believes she should have received, whether Frontier had a duty to provide such medical attention, and whether not receiving such medical attention caused her any injuries. At most, the evidence reveals that Plaintiff herself elected not to seek medical attention for an extended period of time.

At her deposition on November 13, 2018, Plaintiff testified that a flight attendant noticed that Plaintiff had spilled her hot beverage on herself and came over with paper towels, and "blotted up as much water as she could" from Plaintiff's seat. (Exhibit A, 31:15-32:10, 33:3-8.) After completing service, the flight attendant returned to check on Plaintiff and asked her how she was doing. *Id.* at 33:20-34:6. Plaintiff responded that she was "in excruciating pain, but [was] going to live." *Id.* at 34:7-8. Plaintiff did not ask the flight attendant for ice. *Id.* at 33:11-12, 34:14-16. Plaintiff testified that after that, she just "sat there the rest of the flight silent." *Id.* at 36:7. Although she had a change of clothes in her carryon luggage, Plaintiff did not change her clothes. *Id.* at 42:18-43:4. Nothing precluded Plaintiff from requesting further attention from the flight attendant or changing into dry clothes.

Plaintiff's husband received her at the Orlando airport. (Exhibit A, 44:22-23.) Plaintiff and her husband did not go to a hospital, to a pharmacy for first aid supplies, or even straight home from the airport. *Id.* at 46:12-16, 47:22-25. Instead, they went to a sit-down restaurant for dinner on their way home from the airport. *Id.* at 46:15-24. Plaintiff did not seek medical treatment upon returning home that day or even the next day. By her own admission, she waited ten days before she sought medical treatment for the injuries she relates to this incident. (Exhibit A, 51:22-52:1.) Thus, the evidence in the records reveals that any delay in receiving medical attention can only be attributed to Plaintiff herself. By the same token, there is no evidence in the record that her being "unable to get proper medical attention" is attributable to Frontier.

In any event, to prevail on her claim that she was "unable to get proper medical attention," Plaintiff would need a medical expert to provide opinions on causation. "When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera*, 711 Fed.

App'x at 954. "This rule may apply even where there is a close temporal relationship between the incident and the injury." *Aponte*, 2019 U.S. Dist. LEXIS 33418, at *9.

Here, Plaintiff has no such expert, nor is there any documentation or other testimony to support her assertion that a delay in receiving medical attention caused, contributed, or aggravated her alleged injuries. (Doc. #38, p. 4.) Plaintiff is not an expert witness.[6] She has no knowledge, skill, experience, training, or education in the field of medicine. (Exhibit A, 10:11-11:4; 88:2.) As such, Plaintiff and her attorneys, representatives, and witnesses should be barred from introducing into evidence, or making any direct or indirect reference to, Plaintiff's unsupported claim that she was unable to get proper medical attention to address her injuries.

### Conclusion

WHEREFORE, Defendant FRONTIER AIRLINES, INC. respectfully requests that this Honorable Court grant its Motion *in Limine* and enter an Order *in limine* precluding Plaintiff and her attorneys, representatives, and witnesses from making any direct or indirect reference to, or presenting to the jury, evidence and argument identified herein.

Date: August 20, 2019

Respectfully submitted,

**FRONTIER AIRLINES, INC.**

By: *Tara Shelke*

Brian T. Maye (admitted *pro hac vice*)
Tara Shelke (admitted *pro hac vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
        tshelke@amm-law.com

-And-

---

[6] *See* note 1.

Dennis R. O'Connor (FBN: 376574)
Derek J. Angell (FBN: 73449)
O'CONNOR & O'CONNOR, LLC
800 North Magnolia Avenue, Suite 1350
Orlando, Florida 32803
Phone: (407) 843-2100
Email: doconnor@oconlaw.com
       dangell@oconlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2019, I caused the foregoing to be electronically filed with the United States District Court for the Middle District of Florida, Orlando Division, using the CM/ECF System.

By: */s/ Tara Shelke*
One of the attorneys for Defendant
FRONTIER AIRLINES, INC.
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: bmaye@amm-law.com
       tshelke@amm-law.com