UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VANESSA NEWPORT,
      Plaintiff,

v.                                        Case No: 6:18-cv-536-Orl-18GJK

FRONTIER AIRLINES, INC.,
      Defendant.

## ORDER

THIS CAUSE comes for consideration on Defendant Frontier Airline, Inc.'s ("Frontier") Motion for Summary Judgment (the "Motion") (Doc. 33), to which Plaintiff Vanessa Newport ("Plaintiff") responded in opposition (Doc. 35), and Frontier replied (Doc. 36). For the reasons that follow, the Motion will be granted.

### I. BACKGROUND

On February 14, 2016, Plaintiff was a passenger on Frontier Flight 1220 from Las Vegas, Nevada to Orlando, Florida (the "Flight"). (Doc. 38 at 1-2, 5.) During the Flight, Plaintiff requested hot tea from one of Frontier's flight attendants. (*Id.* at 5.) Pursuant to Frontier's policy regarding the service of hot beverages, the flight attendant was required to offer Plaintiff condiments, a napkin, a stir stick, and a lid for her hot tea, which she did. (*Id.*) The flight attendant asked Plaintiff if she wanted cream and sugar to add to her tea, and Plaintiff responded that she only wanted sugar. (*Id.*) The flight attendant then handed Plaintiff a cup of hot water closed with a lid, with a tea bag and sugar on the side. (*Id.*) Plaintiff admitted that, when she accepted the cup, the cup did not feel hot to the touch. (Plaintiff Deposition, Doc. 33-3 at 29.13-17.) Plaintiff also admitted that she does not remember whether the Flight was experiencing any turbulence in the time period immediately prior to Plaintiff receiving beverage service and does not recall any announcements about

turbulence during that time. (Plaintiff Dep. at 26:6-17.) After accepting the cup of hot water, Plaintiff placed the cup of hot water in the cup holder on her tray table, which was already in the down position. (*Id.*) Next, Plaintiff took the lid off the cup and then, according to Plaintiff, "something jerked and then it just – I lost control of it and it came, you know, flying and pouring into my lap." (Plaintiff Dep. at 29:18-24.)

On February 24, 2016, Plaintiff sought medical treatment from her primary care physician, Dr. Frank Reisner ("Dr. Reisner"), for a cough and skin discomfort from the hot water spill. (Plaintiff Dep. at 54:1-55:6; Carson Report, Doc. 33-5 at 2.) Dr. Reisner diagnosed Plaintiff with first and second degree burns. (Carson Report at 2.) Then, on March 16, 2016, Plaintiff returned to Dr. Reisner for persistent chest pain and, after undergoing an ultrasound in the emergency department at Munroe Regional Center ("Munroe"), Plaintiff was diagnosed with a deep vein thrombosis ("DVT") within her proximal left femoral vein. (Plaintiff Dep. at 57:3-58:1; Carson Report at 3.) Dr. Ravi Koti, a board certified hematologist, treated Plaintiff for the DVT, noting that his initial impression was that Plaintiff's embolism "appears to be spontaneous," although he also admitted that he is unable to "state the cause with a reasonable degree of medical probability." (Carson Report at 3-4; Koti Declaration, Doc. 33-4 at 3.) Subsequently, repeat ultrasounds of Plaintiff's lower left extremity, dated March 22, 2016 and November 9, 2016, showed no evidence of DVT. (Koti Decl. at 2.)

On February 26, 2018, Plaintiff filed suit against Frontier in the Ninth Judicial Circuit in and for Orange County, Florida, which was timely removed to this Court on April 6, 2018. (Doc. 1.) As set forth in her Complaint (Doc. 2), Plaintiff brings one (1) count of negligence against Frontier. (*Id.* ¶¶ 14-18.) Plaintiff alleges that "[Frontier's] employees, agents, servants, or personnel negligently served Plaintiff a cup of scalding hot water and an unused tea bag so that Plaintiff had to make her own tea." (*Id.* ¶ 9.) Purportedly, while trying to make tea, Plaintiff spilled

the scalding hot water on her lap when the aircraft hit turbulence, and Plaintiff was not able to obtain proper medical attention until the flight landed hours later. (*Id.* ¶¶ 12-13.) Plaintiff maintains that Frontier failed to warn her of "the dangerously high temperature of the hot water" and "oncoming turbulence that would interfere with Plaintiff's ability to safely make her tea." (*Id.* ¶¶ 10-11.) Now, Frontier moves for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 33.) In support of the Motion, Frontier argues that Plaintiff's negligence claim is pre-empted by the Airline Deregulation Act of 1978 (the "ADA"), 49 U.S.C. § 41713. (*Id.* at 1.) Frontier further maintains that, even if Plaintiff's claim isn't pre-empted by the ADA, Plaintiff fails to present any evidence that Frontier breached any applicable standard of care or caused Plaintiff's alleged injuries. (*Id.*) Further, Frontier states that, "to the extent Plaintiff's liability claim survives summary judgment, Frontier seeks partial summary judgment on Plaintiff's DVT claim, because there is no evidence that such condition was caused by the subject incident." (*Id.* at 1-2.)

## II. LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Id.* "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the

motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. *Id.* at 324. If the evidence offered by the non-moving party "is merely colorable, or is not significantly probative," the Court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case "with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

In Florida, "[a] negligence claim has four elements: (1) a duty by defendant to confirm to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 85 (Fla. DCA 2015) (citation omitted). In order to determine whether Plaintiff's negligence claim is "preempted, in whole or in part, by the ADA[,]" the Court is tasked with analyzing the "substance of Plaintiff's allegations." *Xiaoyun Lu v. AirTran Airways, Inc.*, Civil Action No. 1:13-CV-1846-CC, 2015 WL 5936934, at *3 (N.D. GA. March 31, 2015), *aff'd sub nom. Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657 (11th Cir. 2015). Further, whether a federal statute pre-empts state law is a question of Congressional intent. *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1254 (11th Cir. 2003). "In undertaking this inquiry, we . . . 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990)).

In 1978, the ADA was enacted "to encourage competition in the aviation industry through deregulation." *Lu*, 631 F. App'x at 659-60 (citing *Morales*, 504 U.S. at 378). The ADA includes a pre-emption provision that is meant to prevent states from frustrating the ADA's goals of deregulation by establishing or maintaining economic regulations of their own. (*Id.*) (quoting *Morales*, 504 U.S. at 378). The ADA's pre-emption provision specifically provides, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Importantly, the United States Supreme Court has defined "related to" under the ADA broadly, and the Eleventh Circuit has adopted a broad interpretation of "service" under the ADA. *Lu*, 631 U.S. at 660 (citing *Morales*, 504 U.S. at 383-84 and *Branche*, 42 F.3d at 1256-57). Notably, there is a split of opinion among circuits regarding the definition of "service" as it relates to the ADA's pre-emption provision. For example, the Fifth Circuit has defined "service" as representing "a bargained-for or anticipated provision of labor from one party to another . . . including . . provision of food and drink . . . ." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (citation omitted). In contrast, the Ninth Circuit has interpreted "service" as referring to "such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . ." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265-66 (9th Cir. 1998). In *Branche*, the Eleventh Circuit examined competing definitions of the phrase "service of an air carrier" and then adopted the following definition, which it found "compelling:"

> Services generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between

> the passenger or shipper and the airline. It is these contractual features of air transportation that we believe Congress intended to de-regulate as services and broadly to protect from state regulation.

*Branche*, 342 F.3d at 1256-57 (quoting *Hodges*, 44 F.3d at 336). Further, "even if 'services,' as used in § 41713, is construed to encompass aspects of air carrier operations beyond the transportation of passengers . . . like on-board food and beverage services, . . . its definition is nonetheless still limited to the *bargained-for* aspects of airline operations over which carriers compete." *Id.* at 1258. Thus, "elements of air carrier operations over which airlines do not compete are not 'services' within the meaning of the ADA's pre-emption provision, and state laws related to these elements are not pre-empted." *Id.* Additionally, "safety is not a basis on which airlines compete for passengers, and as such is not something for which air travelers bargain; it is implicit in every ticket sold by every carrier." *Id.* at 1260. "Although some safety-related claims may be tied to air carrier services, the very fact that they concern safety, standing along, is insufficient to demonstrate this nexus." *Id.*

To enhance a passenger's flying experience, Frontier routinely offers beverage services, including the option of procuring hot tea and coffee. (Doc. 38 at 5.) However, Frontier does not serve custom-made or made-to-order beverages to passengers. (Rush Declaration, Doc. 33-2 ¶ 4.) In accordance with Frontier's policies regarding service of hot beverages, Frontier's flight attendant offered Plaintiff a cup of hot water with a lid, as well as a tea bag and sugar on the side. After Plaintiff accepted the cup of water from the flight attendant and removed the lid from the cup, Plaintiff lost control of the cup and the hot water spilled on Plaintiff. The flight attendant did not spill the water on Plaintiff; rather, Plaintiff maintains that Frontier is negligent because it served dangerously hot water and forced Plaintiff to take the lid off the cup of hot water to make her own tea during a turbulent flight. Notably, while the undisputed facts show that Plaintiff was served hot water in a cup with a lid, there is no credible evidence that the flight experienced turbulence of any

kind immediately prior to Plaintiff receiving beverage service. In any event, Frontier's standards and industry standards when the Flight took place permitted in-flight beverage service during light turbulence and did not require flight attendants to serve pre-made or made-to-order hot beverages. (*See* Laura Rush Declaration, Doc. 33-2 ¶¶ 8-9, 14.) In addition to the lack of evidence that the Flight experienced turbulence prior to Plaintiff receiving beverage service, there is also no evidence that the Flight experienced turbulence immediately after Plaintiff was served with the hot water. Additionally, beyond Plaintiff's blanket allegation that she spilled the hot water after "something jerked . . . [l]ike, turbulence, I believe," there is no evidence that turbulence caused the jerking motion as Plaintiff alleges. (*See* Plaintiff Dep. at 29:25-30:4.) In fact, according to the unrefuted declaration from Laura T. Rush, Frontier's Director of In-flight Service, Frontier did not receive any reports from flight attendants assigned to the Flight indicating that the Flight experienced any kind of turbulence. (*See* Rush Decl. ¶ 13.)

There is simply a lack of evidence to support Plaintiff's claim that Frontier breached any duty it owed her while she was a passenger on the Flight. Further, the connection between Frontier's alleged negligent conduct and air carrier "services" over which airlines compete, namely the provision of food and beverages, is sufficient to implicate the ADA's pre-emption clause. In so finding, the Court notes that the imposition of a standard whereby flight attendants are required to customize hot beverages for passengers would likely require a fundamental change in the beverage service policies of air carriers operating in Florida air space. Such regulation of "services" provided by air carriers stands in opposition to the ADA's deregulation aims. Plaintiff has not presented evidence to show that Frontier breached any applicable standard of care, and Plaintiff's negligence claim against Frontier is pre-empted by the ADA. Accordingly, summary judgment will be granted in favor of Frontier.

## IV. CONCLUSION

The Court has reviewed the record, the parties' arguments, and relevant law, and it hereby **ORDERED** and **ADJUDGED** that Defendant Frontier Airline, Inc.'s Motion for Summary Judgment (Doc. 33) is **GRANTED**. The Clerk of Court is directed to **ENTER FINAL SUMMARY JUDGMENT** in favor of Defendant Frontier Airlines, Inc. and against Plaintiff Vanessa Newport. Thereafter, the Clerk of Court is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on this 29 day of August, 2019.

                              **G. KENDALL SHARP**
                              SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record